## Richmond

R & T INVESTMENTS, LTD., ET AL.

V.

GLADYS MAY JOHNS

Record No. 831442.

October 12, 1984.

Present: All the Justices.

*J. Alvernon Smith, Jr. (Samuel Baronian, Jr.; Smith, Blank, Isaacs & Hinton,* on brief), for appellants.
*Milton P. Miller* for appellee.

COMPTON, J., delivered the opinion of the Court.

In order to establish a compensable injury under the Workers' Compensation Act, a claimant must show that the injury was the result of an accident "arising out of and in the course of the employment. . . ." Code § 65.1-7. The sole question in this appeal is whether the injury arose out of the employment.

On December 15, 1981, appellee Gladys May Johns was injured during a bank robbery in Richmond. At the time, the claimant, age 64, was employed by appellant R & T Investments, Inc., trading as Capitol Coin Shop. The employer was in the business of buying precious metals.

The claimant's duties involved work inside and outside the employer's shop. She purchased gold and silver from customers who came to the store. In addition, she "would go to the bank and make deposits" and carry gold to the "melter." She testified that she "was more like a runner" and that she would "do anything, go anywhere for them."

On the day in question, about 1:45 p.m., the claimant, as part of her duties, walked to a branch bank located in a shopping center several blocks from her place of employment. She was carrying $1,800.00 of her employer's funds in cash and intended to deposit the money to the credit of the employer's account. She was not on any business of her own at the time; she personally dealt with another bank. She was not wearing a uniform. The evidence does not indicate that she was carrying the money in a container with any special markings that would identify the money or identify her as an employee of Capitol Coin Shop.

While the claimant was standing inside the bank in a line of customers at a teller's window, three armed, masked men suddenly entered the bank. One of the robbers ordered everyone to "hit the floor." At that time, one of the men placed a sawed-off shotgun to the back of the claimant's neck, and the employer's money was taken from the claimant's hand. The claimant dropped to the floor. As a result, she suffered injury to her back, which gave rise to the instant claim.

Following a hearing, a deputy commissioner determined that the claimant had borne the burden of proving a "job-related occurrence" within the meaning of Code § 65.1-7 and entered an award of compensation. Upon review, the full Commission unanimously agreed with this finding. We granted the employer and its insurance carrier an appeal to the August 1983 final award.

On appeal, the employer and its carrier (collectively, the employer) agree that an "accident" occurred "in the course of" the claimant's employment. The employer contends, however, that the claimant failed to prove that her injury arose out of the employment.

The phrases "arising out of" and "in the course of" the employment are not synonymous, and the claimant must establish both conditions by a preponderance of the evidence before compensation will be awarded. *Baggett & Meador Cos.* v. *Dillon,* 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978). The words "arising out of," as used in Code § 65.1-7, refer to the origin or cause of the injury while the language "in the course of" pertains to the time, place, and circumstances under which the accident occurred. *Id.,* 248 S.E.2d at 822. An accident occurs during "the course of" the employment if it happens within the period of employment, at a place where the employee may reasonably be expected to be, and while she is reasonably fulfilling the duties of her employment, or is performing a task that is reasonably incidental thereto. *Id.,* 248 S.E.2d at 822.

An accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed. *In re McNicol,* 215 Mass. 497, 499, 102 N.E. 697, 697 (1913). Quoting *In re McNicol,* we have said: " 'Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occa-

sioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " *Bradshaw* v. *Aronovitch,* 170 Va. 329, 335, 196 S.E. 684, 686 (1938).

The mere fact that the hazard is one to which the general public likewise is exposed is not, however, conclusive against the existence of such causal relationship. *Honaker* v. *Hartley,* 140 Va. 1, 11, 124 S.E. 220, 222 (1924). The requisite nexus in an assault case is supplied if there is "a showing that the probability of assault was augmented either because of the peculiar character of the claimant's job or because of the special liability to assault associated with the environment in which he must work." 1 A. Larson, *The Law of Workmen's Compensation* § 11.11(a) at 3-161 (1984). Professor Larson notes that among the occupations that have, for obvious reasons, been held to subject the employee to a special risk of assault and increased likelihood of robbery are those jobs that involve carrying money or that entail the handling of money. *Id.* at 3-161 to 3-165. *See Continental Life Insurance Co.* v. *Gough,* 161 Va. 755, 761, 172 S.E. 264, 266 (1934). *See also Immer and Company* v. *Brosnahan,* 207 Va. 720, 725, 152 S.E.2d 254, 257-58 (1967).

Applying the foregoing principles to the facts of the present case, we hold that the claimant was injured in an accident "arising out of" her employment. As part of her duties, this employee was required regularly to handle and carry large sums of money in cash to a bank. Parenthetically, we reject the employer's contention, made during oral argument, that the evidence fails to establish the claimant made regular trips to the employer's bank. As we view the factual findings of the Commission in the light most favorable to the claimant, who prevailed below, the inference to be drawn from testimony that the claimant "would go to the bank and make deposits" is sufficient to establish that the trip on the

day in question was a routine part of her duties, and not an isolated act. Thus, the claimant's regular presence in a branch bank, an environment that is prone to the violence of robbery, exposed her to a special risk of assault. Accordingly, we find a direct causal connection between the claimant's injury and the conditions under which her employer required the work to be performed sufficient to prove that the injury arose out of the employment.

Relying on *Baggett & Meador Cos.* v. *Dillon, supra,* the employer argues there was insufficient causal connection between the injury and the employment. It contends that the danger, if any, to which this employee was subjected was one to which the general public likewise was exposed, and was not peculiar to the claimant's work. Noting that the robbery and assault were not directed against the claimant as an employee of Capitol Coin Shop, and that all of the customers were equally exposed to the robbers, the employer contends that the personal assault on the claimant was merely a noncompensable "random event." We disagree. *Dillon* is distinguishable on its facts.

In *Dillon,* a truck driver was killed, apparently from a sniper's bullet, while he was beside his employer's truck which was parked in a rest area along an interstate highway. The broad issue in that case was whether the accidental killing arose out of the employment, but the "pivotal question" there was whether, given the facts of the case, the court could properly apply a presumption. In *Dillon,* we said that the court will indulge a presumption that the relation of master and servant existed at the time of an accident and that it arose out of and in the course of the employment if the employee is found dead as the result of an accident at his place of work or nearby, where his duties may have called him during the hours of his work, and if there is no evidence offered to show what caused the death or to show that he was not engaged in his master's business at the time. 219 Va. at 639-40, 248 S.E.2d at 823.

Relying on *Hopson* v. *Hungerford Coal Co.,* 187 Va. 299, 46 S.E.2d 392 (1948), another death case, we held in *Dillon* that use of the presumption was "inappropriate" and denied compensation because the evidence was insufficient to sustain the claim. 219 Va. at 643, 248 S.E.2d at 825. We said the presumption could not be employed because other evidence, and the logical inferences to be drawn from the evidence, tended to support the conclusion that

there was no causal connection between the death and the employment. We reasoned that since there was no indication that the unknown assailant's gun was aimed at Dillon because he was a truck driver, his death was the result of an arbitrary act and would have occurred whether he was a hitchhiker, a stranded motorist, or a truck driver. *Id.,* 248 S.E.2d at 825. In summary, we said that "the risk was not peculiar to the work." *Id.* at 644, 248 S.E.2d at 825. We could not say that Dillon's occupation as a truck driver subjected him, to any greater degree than other members of the general public who were not truck drivers, to the danger of being shot accidentally or intentionally along a public highway. *Id.,* 248 S.E.2d at 825.

There are differences between the present case and *Dillon* which are obvious and significant. Here, we are not dealing with a death claim, with the applicability of a presumption, or with an absence of proof evidencing the cause of the injury. But more importantly, the stark difference between the two cases is that, here, the risk was peculiar to the work, as we have said, while in *Dillon* it was not. The hazard of being shot by a sniper is not an ordinary risk incident to travel over the public highways and rest areas. On the other hand, the hazard of being the victim of a robbery as the result of carrying cash during repeated, regular trips to a branch bank is a risk normal to those who are couriers of funds. In essence, to paraphrase *Aronovitch,* the causative danger of being assaulted in a bank robbery had its origin in a risk connected with the employment of this claimant and flowed from that source as a rational consequence. *See* 170 Va. 329, 335, 196 S.E. 648, 686 (1938).

Accordingly, the award appealed from will be

*Affirmed.*