# CITY OF RICHMOND

## v.

# VERNELL G. BRAXTON

Record No. 841712

October 11, 1985

Present: All the Justices

*(Reginald M. Barley, Senior Assistant City Attorney*, on brief), for appellant. Appellant submitting on brief.
*Hugh T. Antrim (Thompson & McMullan,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

This is a workers' compensation case involving a sexual assault resulting in injury to the claimant, Vernell G. Braxton. It is conceded that the injury arose in the course of the claimant's employment with the City of Richmond. The question for decision is whether the injury also arose out of the employment. The two elements, an injury arising out of *and* in the course of the employment, must concur to produce a compensable claim. *R & T Investments* v. *Johns*, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984).

The record shows that on October 23, 1981, the claimant was employed by the City as a ticket seller in the box office of the Mosque, a municipally owned theater facility. The claimant's immediate supervisor was Raymond E. McMullin, and he in turn was supervised by David Carmen Barefoot, manager of the Mosque.

On the afternoon of October 23, the claimant and a female co-worker were engaged in selling tickets at the box office. Sometime before four o'clock, McMullin told the co-worker she could leave early. A short time later, McMullin told the claimant she could also leave ahead of time.

The claimant went to the rear of the box office to make a telephone call. While she was making the call, McMullin grabbed her and began fondling her breasts. The episode was interrupted when a customer appeared at the box office window. McMullin waited on the customer and then attempted to grab the claimant again, but she broke away and ran out of the box office.

McMullin had an office adjoining the box office. He subscribed to *Playboy* magazine and had the monthly issues delivered to his office, where he displayed them openly along with other sexually oriented materials which the claimant considered "pornographic."

McMullin regularly discussed sexual topics with the other female employee in the box office and showed her pictures in *Playboy*.

The claimant did not complain to Barefoot, McMullin's supervisor, about either the "pornographic literature" or the sexual assault upon her. Barefoot admitted knowing that McMullin received *Playboy* at the office, and the claimant testified Barefoot also knew that McMullin's "collection" was "not only maintained but on public display" as well.

In its written opinion, the Commission noted that pursuant to Code § 65.1-23.1,* "certain sexual abuses are presumed to be the result of employment conditions where the nature of such employment substantially increases the risk of such assault and damages compensable under the [Workers' Compensation] Act are shown to have resulted." The Commission stated, however, that, because no claim was made pursuant to Code § 65.1-23.1, no statutory presumption existed and it was the claimant's burden "to prove that her employment conditions increased the risk of assault."

The Commission, with Chairman James dissenting, then proceeded to find that McMullin "engaged in activities and conversations at the employment site which clearly exhibited a proclivity to engage in aberrant behavior with an emphasis on sexual themes." The Commission found further that "the risk of assault to the claimant was increased by the continued presence of McMullin on the scene, and . . . that the City had adequate notice through its representative, Barefoot, of the conditions created." Hence, the majority concluded, "the management of the business, or lack of it, permitted an exaggerated risk to become part of day-to-day activity in the workplace and, therefore, the risk was sufficiently connected with the business and not independent of it."

When we review an award of the Industrial Commission, its findings of fact, if supported by credible evidence, are conclusive and binding upon us. Code § 65.1-98; *Conner* v. *Bragg*, 203 Va. 204, 206, 123 S.E.2d 393, 395 (1962). A finding, however, that an injury arose out of and in the course of employment is a mixed

---

* § 65.1-23.1. *Victims of sexual assault.*—Any employee who, in the course of employment, is sexually assaulted, as defined in § 18.2-61 [rape] or § 18.2-67.1 [forcible sodomy], and promptly reports the assault to the appropriate law-enforcement authority, where the nature of such employment substantially increases the risk of such assault, upon a proper showing of damages compensable under this title, shall be deemed to have suffered an injury arising out of the employment and shall have a valid claim for workers' compensation benefits.

finding of law and fact and is properly reviewable by this Court. *Id.* at 207, 123 S.E.2d at 395.

As noted at the outset, the question here is whether the claimant's injury arose out of her employment. In *R & T Investments v. Johnson*, we stated:

> An accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed. *In re McNicol*, 215 Mass. 497, 499, 102 N.E. 697, 697 (1913). Quoting *In re McNicol*, we have said: " 'Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. *But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [worker] would have been equally exposed apart from the employment.* The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " *Bradshaw* v. *Aronovitch*, 170 Va. 329, 335, 196 S.E. 684, 686 (1938).

228 Va. at 252-53, 321 S.E.2d at 289 (emphasis added).

We believe that the present case is controlled by the language italicized above, *viz.*, "[the applicable test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [worker] would have been equally exposed apart from the employment." As Chairman James pointed out in his dissent, "[i]t is not sufficient to find that the employment is what brought the parties into close proximity[;] . . . there must be a causal connection between the conditions under which the work is required to be performed and the resulting injury."

 In an assault case claimed to arise out of the employment, the necessary causal connection may be established if the evidence shows that the attack was directed against the claimant as an employee of because of the employment, *Continental Life Ins. Co.* v. *Gough*, 161 Va. 755, 760, 172 S.E. 264, 266 (1934), for example, where an employee as part of his or her duties is required "regularly to handle and carry large sums of money in cash to a bank," *R & T Investments*, 228 Va. at 253, 321 S.E.2d at 289. Here, again quoting Chairman James, "the assault [was] of a personal nature as it was not directed against the employee as part of the employment relationship and was in no way in furtherance of the employer's business."

In large part, the Commission based its decision to award compensation upon evidence which established knowledge on the City's part of McMullin's "proclivity to engage in aberrant behavior with an emphasis on sexual themes." But, to borrow a final quotation from Chairman James' dissent, "[t]he record contains no evidence to support a conclusion that a person who allows Playboy Magazines to be stored in his office or left open on a table is more inclined to commit a sexual assault than anyone else." And, as common sense tells us, neither the Commission nor this Court can take judicial notice that such a practice likely would produce such an inclination.

We will reverse the award of the Commission and dismiss the claimant's application.

*Reversed and dismissed.*