404 S.E.2d 723 (1991)
Kimberly KELLY, Appellant,
v.
FIRST VIRGINIA BANK-SOUTHWEST, et al., Appellees.
No. 901144.
Supreme Court of Virginia.
April 19, 1991.
D. Tillar, Long & Long, Blacksburg, for Kimberly Kelly.
G.C. Hancock-Gilmer & Sadler, Pulaski, T.T. Lawson, Woods, Rogers & Hazlegrove, Roanoke, for First Virginia Bank.
Present: All the Justices.
Upon consideration of the record, briefs, and arguments of counsel, the Court is of opinion that the allegations in appellant's motion for judgment do not bring this action within the subject-matter jurisdiction of the trial court. See Haddon v. Metropolitan Life Insurance Co., 239 Va. 397, 389 S.E.2d 712 (1990). Accordingly, the trial court's dismissal of those counts is affirmed. The appellant shall pay to the appellee thirty dollars damages.
LACY, Justice, with whom WHITING, Justice joins, dissenting.
I dissent. In my opinion, the trial court erred in sustaining the defendants' demurrer. This error resulted from the trial court's inappropriate and erroneous application of Haddon v. Metropolitan Life Insurance Co., 239 Va. 397, 389 S.E.2d 712 (1990), and its failure to consider and decide the relevant issue based on long-standing principles of workers' compensation law.
Kimberly Kelly filed her motion for judgment on March 23, 1988, against Billy Ray Hubble, her immediate supervisor, J.B. LaPrade and James N. Hinson, Jr., Hubble's immediate supervisors, and First Virginia Bank-Southwest, the employer of Kelly, Hubble, LaPrade and Hinson. In her motion for judgment, Kelly alleged that Hubble engaged in repeated acts and statements of a sexual nature that were offensive, humiliating, embarrassing, distressing, and harassing. Kelly further alleged that she reported these acts to Hubble's supervisors, but that neither LaPrade nor Hinson reprimanded Hubble; rather, they further intimidated and embarrassed Kelly. Kelly alleged that, as a result of these actions, she suffered severe emotional and physical stress and mental anguish requiring medical and psychological treatment, loss of her promotion, and that she was constructively discharged.
In the defendants' first demurrer and motion to dismiss, they did not assert the jurisdictional bar of the Workers' Compensation Act. Rather, they contended that Kelly's pleading failed to state a cause of action on which relief could be granted, and that the Bank could not be held liable on either a principal and agent or respondeat-superior theory, because "[t]here has been no argument, and indeed there could be none, that the alleged acts of defendant Hubble were within the scope of his employment," those acts were not in furtherance of the Bank's business, and the allegations did not support ratification of Hubble's acts by the Bank.
On February 6, 1989, the trial court entered an order granting the motion to dismiss as to LaPrade and Hinson, and denying the motion as to Hubble and the Bank. A motion to reconsider was denied on April 14, 1989, and the remaining defendants *724 thereafter filed their answers to the motion for judgment.
On April 16, 1990, two years after the case was filed, the Bank and Hubble filed a second demurrer, claiming for the first time that Kelly's claim was within the Workers' Compensation Act and, therefore, the exclusivity provision of that Act barred her suit. Since Kelly alleged an intentional tort committed by a fellow employee and by her employer, defendants argued that "[p]ursuant to Haddon, this cause of action is barred by the Virginia Worker's Compensation Act." Kelly responded that her alleged injuries did not "arise out of her employment" as required for coverage under the Act, and that this issue was not addressed in Haddon.
The trial court sustained the demurrer, stating that the "essence" of Kelly's allegations "is strikingly similar" to that in Haddon, and:
[a]lthough the plaintiffs here ingeniously argue that the Haddon court addressed only the first prong of the three prong Virginia Workers' Compensation Act mandate ... this [c]ourt does not assume that the Haddon court was unmindful of the requirements of said Act. Accordingly, the [c]ourt determines that the Virginia Workers' Compensation Act is the plaintiffs' exclusive remedy.
I am at a loss to discern how Haddon, a case that interpreted only the "injury by accident" condition for Workers' Compensation Act coverage, could resolve the coverage issue here. The effect of the majority's action today allows a finding that Workers' Compensation Act coverage conditions existthat Kelly's injury "arose out of" her employmentin the total absence of any analysis applying the relevant legal standards to the facts alleged in this case. The only clue given us for this result is the trial court's comments that this Court was not "unmindful of the requirements of said Act" in deciding Haddon, and that the "essence" of Haddon's case was "strikingly similar" to Kelly's allegations.
This Court has repeatedly remarked that no two cases are identical and that the circumstances of each case control whether the injury is within the ambit of the Act. Fouts v. Anderson, 219 Va. 666, 669, 250 S.E.2d 746, 748 (1979); Ferrell v. Beddow, 203 Va. 472, 475, 125 S.E.2d 196, 199 (1962); Sullivan v. Suffolk Peanut Co., 171 Va. 439, 443, 199 S.E. 504, 505 (1938).
Even if the acts complained of are similar, coverage under the Act may or may not be available, depending on the facts of each case. Cf. Plummer v. Landmark Communications, 235 Va. 78, 366 S.E.2d 73 (1988), and Reamer v. National Service Industries, 237 Va. 466, 377 S.E.2d 627 (1989) (physical assaults suffered by employee while on the job); R & T Investments v. Johns, 228 Va. 249, 321 S.E.2d 287 (1984), and Hill City Trucking v. Christian, 238 Va. 735, 385 S.E.2d 377 (1989) (injuries suffered by employee as a result of robbery). Each of these cases turned on its own facts. It is not enough here to claim that any injuries resulting from sexually offensive acts are per se within the Act's coverage. At the very least, the majority should have identified the similarities in the two cases which support its decision. However, my review of the record in each case convinces me that, insofar as the facts relevant to the coverage condition in issue here, finding sufficient similarity to sustain coverage is an impossible task.
First, Kelly never alleged that the acts complained of were within the scope of Hubble's employment or arose out of her employment; Haddon alleged both in her cause of action. More importantly, Haddon alleged the offensive conduct was undertaken "with the hopes it would culminate in the loss of her employment," and that certain other actions affecting her work were undertaken by the defendant to make her "the brunt of abuse" by fellow employees, including enlisting the aid of other employees and a non-employee to demean Ms. Haddon and "rid himself of Ms. Haddon." Kelly's allegations were limited to the offensive nature of the conduct and its impact on her alone, and she did not allege that the purpose of the conduct was to "get rid of" her as an employee.
*725 These differences alone counsel against identical treatment. The need to consider Kelly's case on its own merits is further heightened in light of the substantially divergent legal analysis undertaken by the Haddon and Kelly trial courts to determine coverage under the Act.
In Haddon, the trial court's opinion shows that all conditions for Workers' Compensation Act coverage were met. There was no dispute as to whether Haddon's injury "arose out of" and "in the course of" her employment. Haddon's allegation that the offensive conduct was undertaken and pursued to "get rid of" her and end her employment, specifically addressed the "arising out of" and "in the course of" conditions. Schemes of employees to cause the demotion or termination of a fellow employee are not unknown or unusual working conditions and constitute a normal risk of employment. The acts engaged in to accomplish this end may assume an endless variety of form, and perhaps no form is as offensive as involved here. Nevertheless, the acts and the resulting injury as alleged by Haddon were inextricably bound to and "arose out of" her employment. They would not have happened if she had held employment elsewhere. While the parties agreed on these coverage issues, the court was required to, and did, resolve their disagreement on the "injury by accident" condition.
The trial court concluded that Ms. Haddon's claims constituted "an injury by accident arising out of and in the course of employment." By affirming the trial court's judgment, we concurred with its findings as to each coverage condition, although we only addressed the issue of "accident" that was brought forth on appeal.
In this case, the trial court identified the requisite conditions for coverage under the Act but did not review the facts or law, analyze, discuss, or find that each condition did or did not exist. The trial court apparently believed that it was precluded from making that analysis based on this Court's holding in Haddon.[*] In my view, such a reading of Haddon was, and is, erroneous.
The trial court in Haddon undertook the requisite coverage analysis and we sustained its conclusion. The trial court here did not engage in that analysis. The majority, by affirming a holding without any analysis of the individual conditions for coverage, today has instituted a less rigorous standard for coverage under the Workers' Compensation Act in all cases involving allegations of sexually offensive acts.
The tragedy of the majority's action is particularly painful for Ms. Kelly. When subjected to the proper analysis, her claim, as alleged in her motion for judgment, does not satisfy the Act's coverage conditions. Therefore, the Act's exclusivity provision was inapplicable to Kelly and her cause of action should not have been barred.
A plethora of cases has addressed whether an injury "arises out of" the employment. While it is difficult to fashion a standard or definition which will embrace every circumstance in which the issue is raised we have adopted an "actual risk" test, that is:
[I]f the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. Hill City, 238 Va. at 739, 385 S.E.2d at 379 (emphasis omitted).
*726 Furthermore, we have held that it is not enough that the alleged tort-feasor and injured employee were put in close proximity or brought together by virtue of the employment; the resulting injury must be causally connected to the required working conditions. City of Richmond v. Braxton, 230 Va. 161, 164, 335 S.E.2d 259, 261 (1985). The causal connection is established if the tortious act is not personal in nature and is directed to the individual as an employee or because of the employment. Id. at 165, 335 S.E.2d at 262.
The allegations in this case show that the tortious acts which resulted in injury were not directed at Kelly as an employee, but at her personally. There was no allegation that the acts were related to her employment in any way, as there was in Haddon where the alleged purpose was to "get rid of" Haddon. Applying the actual risk test set out above, the injuries alleged here were not a "natural incident" to working at a bank and would not be "contemplated by a reasonable person" as a result of any "exposure" inherent in "the nature of the [bank] employment." Furthermore, the defendant Bank argued, and the trial court held, that the offensive acts were not in furtherance of the business of the Bank and were not within the scope of Hubble's employment. Therefore, the "causative danger" was not "incidental to the character of the [banking] business" and was "independent of the relation of master and servant" between Kelly and the Bank.
Applying this well-established analysis to the facts alleged in this case, convinces me that the injuries Kelly described in her motion for judgment did not "arise out of" her employment with the Bank. Consequently, that condition for coverage under the Workers' Compensation Act and its accompanying exclusivity provision is not met. Therefore, the trial court erred in dismissing Kelly's motion for judgment for lack of jurisdiction, and I would reverse the judgment.
HASSELL, Justice, dissenting.
I dissent because I do not believe that Kimberly Kelly's claims are barred by the Workers' Compensation Act, and I disagree with the majority's reliance upon Haddon v. Metropolitan Life Insurance Co., 239 Va. 397, 389 S.E.2d 712 (1990).[**]
In Haddon, an employee, Sylvia Haddon, filed a motion for judgment against her employer, Metropolitan Life Insurance Company, and Don Elliott, a Metropolitan Life Insurance branch manager. She alleged that Elliott, while acting within the scope of his employment, "engaged in a pattern of harassment and sex discrimination" against her, which included sexually explicit and offensive remarks that he made to her. She sought damages for intentional infliction of emotional distress, defamation, insulting words, and tortious interference with her employment contract. The trial court sustained Metropolitan Life's demurrer and dismissed the action. This Court held that Haddon's tort action was barred because "the intentional act of sexual assault" was included within the scope of the Virginia Workers' Compensation Act. Id. at 400, 389 S.E.2d at 714.
Haddon, however, is inconsistent with City of Richmond v. Braxton, 230 Va. 161, 335 S.E.2d 259 (1985). In my opinion, the two decisions logically cannot be distinguished and, therefore, legally are at odds. Braxton, like Haddon, is a case involving "the intentional act of sexual assault." Vernell Braxton was employed by the City of Richmond as a ticket seller in a box office at a municipally-owned theater. On the afternoon of October 23, 1981, Braxton and a female co-worker were engaged in selling tickets at the box office. Raymond E. McMullin, her supervisor, told the other employee she could leave early. After the employee had left, McMullin grabbed Braxton and began fondling her breasts. The episode was interrupted when a customer appeared at the box office window. After the customer left, McMullin grabbed Braxton *727 again, but she managed to escape. Id. at 162, 335 S.E.2d at 260.
Braxton filed a claim with the Industrial Commission as permitted by the Workers' Compensation Act. "In its written opinion, the Commission noted that pursuant to Code § 65.1-23.1, `certain sexual abuses are presumed to be the result of employment conditions where the nature of such employment substantially increases the risk of such assault and damages compensable under the [Workers' Compensation] Act are shown to have resulted.'" Id. at 163, 335 S.E.2d at 260-61.
Relying upon clearly established precedent, in Braxton, we stated:
[T]he question here is whether the claimant's injury arose out of her employment. In R & T Investments v. Johns, [228 Va. 249, 252-53, 321 S.E.2d 287, 289 (1984)], we stated:
"An accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed. In re McNicol, 215 Mass. 497, 499, 102 N.E. 697, 697 (1913). Quoting In re McNicol, we have said: `Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises `out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [worker] would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938) (emphasis added)."
230 Va. at 164, 335 S.E.2d at 261.
In Braxton this Court reversed and dismissed the award of the Commission, and relying upon clearly established precedent, we held:
In an assault case claimed to arise out of the employment, the necessary causal connection may be established if the evidence shows that the attack was directed against the claimant as an employee or because of the employment ... for example, where an employee as part of his or her duties is required `regularly to handle and carry large sums of money in cash to a bank'.... Here ... `the assault [was] of a personal nature as it was not directed against the employee as part of the employment relationship and was in no way in furtherance of the employer's business.'
Id. at 165, 335 S.E.2d at 262.
Even though both Braxton and Haddon involved "the intentional act of sexual assault" and are factually similar, the two decisions are inconsistent and cannot be reconciled or read harmoniously. Perplexingly, the Court in Haddon does not even discuss Braxton or any of the established precedent cited therein. If it was the intent of the Court in Haddon to overrule Braxton and precedent which has been clearly established and followed in this Commonwealth for over a half century, the Court should have done so explicitly. I disagree with Justice Lacy's attempts to distinguish Haddon from Braxton in her dissent. None of the facts summarized by Justice Lacy in her dissent are mentioned in Haddon and, therefore, I must assume that those facts were not operative facts germane to the opinion.
I believe that under the facts of the present case, sexual harassment cannot and should not be considered "a natural incident of work" contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment. See Reamer v. National Service Industries, *728 237 Va. 466, 377 S.E.2d 627 (1989). Additionally, a supervisor's intentional acts of sexual harassment against an employee are not acts "in furtherance of the employer's business."
As I understand the majority's order in this case and this Court's decision in Haddon, female employees in Virginia are deemed to have accepted the risk of being victimized by sexual assaults committed by their supervisors if those assaults happen to occur in the work place. I do not agree with this premise.
This order shall be certified to the said circuit court.
NOTES
[*] Indeed, having held previously that the complained of acts were not within the scope of Hubble's employment and were not in furtherance of the Bank's business, it is illogical to presume that the court simply ignored its own holding and found the requisite "arising out of" condition.
[**] The relevant facts alleged in Kelly's motion for judgment are summarized in Justice Lacy's dissent and will not be repeated here.