# CIRCUIT COURT OF THE CITY OF WINCHESTER

Jeanne E. Fox

v.

Rich Products Corp.
and Thomas C. Shelhamer

September 20, 1994

Case No. (Law) No. 94-99

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on September 16, 1994, for argument on the Defendants' Demurrers. The Plaintiff had withdrawn Count V of her motion for judgement. E. Eugene Gunter and Jesse Richardson, Esquires, appeared for the Plaintiff; J. Robert Brame, III, Esquire, appeared for the Defendant Rich Products Corporation; and Thomas V. Monahan, Esquire, appeared for the Defendant Thomas C. Shelhamer.

## I. Statement of Material Procedural Matters

The following facts are stated in the parties' pleadings.

Plaintiff filed a five count Motion for Judgment, which is now four counts because Count V has been withdrawn, against Rich Products Corporation and Thomas C. Shelhamer alleging assault and battery, sexual assault and battery, negligent infliction of emotional harm, and intentional infliction of emotional distress, based on incidents which allegedly occurred during May through July 1992.

Defendant Shelhamer demurred to Counts One through Four of the Motion for Judgment claiming that the Virginia Workers' Compensation Act constitutes a bar to the claims. Shelhamer demurred to Count Four of the Motion for Judgment on the grounds that Plaintiff cannot state a claim of negligent infliction of emotional distress in the absence of physical injury and that said allegation had not been made.

Defendant Rich Products Corporation filed similar Demurrers but failed to file a Demurrer to the alleged failure to plead personal injury with respect to negligent infliction of emotional distress. Contemporaneously with its filing of its memorandum in support of the Demurrers and Special Plea of Statute of Limitations, Defendant Rich Products Corporation filed an "Additional Demurrer to Plaintiff's Count Four," essentially restating Defendant Shelhamer's Demurrer based on the alleged failure to claim physical injury. Defendant Rich Products Corporation additionally raised a new "Ground of Defense" with respect to Count Two of the Motion for Judgment on page 5 of its Memorandum in Support of Demurrers and Special Plea of Statute of Limitations. In this new "Ground of Defense" Defendant alleges that common law does not recognize causes of action for sexual assault or sexual battery.

The motion for judgment alleges the following about the precipitating incidents:

> On or about May, 1992, [when] Defendant Shelhamer told your Plaintiff that he was not sure that he could continue to work with her because he was physically attracted to her. He stated that Plaintiff knew what she did to him and that Plaintiff drove him crazy when she was around him. [The Plaintiff tried to leave the room, and] Defendant Shelhamer grabbed your Plaintiff and tried to pull her close to him . . . .
>
> On or about June of 1992, Defendant Shelhamer lured Plaintiff into his office and, again, grabbed your Plaintiff and attempted to pull her against his body.
>
> On or about July of 1992, Defendant Shelhamer was seen shaking and was asked about it. Later, when he had the opportunity, he grabbed your Plaintiff; tried to embrace her; and told her "it is how bad I want you that makes me shake."

The Plaintiff took a leave of absence, during which she claims that Shelhamer "called her every day. During some of those telephone conversations, he would ask her how she was dressed or what she was wearing. During other of those conversations, he would beg her to come back to work." Motion for Judgment, para. 9. The Plaintiff ultimately resigned her employment at Rich Products.

Plaintiff claims that she was "injured in her body and mind" by her encounters with Shelhamer. Motion for Judgment, para. 34. This has been amplified in her amended paragraph 34A that these incidents caused her

mental distress which caused "inability to sleep at night, loss of appetite, significant weight loss, crying, clinical depression, aversion to public places, and reclusiveness."

## II. *Conclusions of Law*

### A. *Demurrer*

In considering a demurrer the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988). The Supreme Court recently reviewed the principles governing the trial court's ruling on a demurrer in *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993), in which it stated:

> "A demurrer admits the truth of all material facts properly pleaded. Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Rosillo v. Winters*, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988). "On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading." *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156, 156 (1991).
>
> When a motion for judgment or a bill of complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer. *Hunter v. Burroughs*, 123 Va. 113, 129, 96 S.E. 360, 365 (1918). And, even though a motion for judgment or a bill of complaint may be imperfect, when it is drafted so that defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer; if a defendant desires more definite information, or a more specific statement of the grounds of the claim, the defendant should request the court to order the plaintiff to file a bill of particulars. *Alexander v. Kuykendall*, 192 Va. 8, 14-15, 63 S.E.2d 746, 749-50 (1951).

These principles were applied to the Court's ruling on the demurrers in this case.

## B. *Middlekauff and Lichtman do not change the law*

Defendants, relying heavily upon *Haddon v. Metropolitan Life Ins. Co.*, 239 Va. 397, 389 S.E.2d 712 (1990), argue that *Middlekauff v. Allstate Ins. Co.*, 247 Va. 150, 439 S.E.2d 394 (1994), and *Lichtman v. Knouf*, 248 Va. 138, 445 S.E.2d 114 (1994), announce a shocking new rule of law, which should not be applied retroactively. However, these decisions merely affirmed the long standing rule that gradually occurring injuries were not injuries within the purview of the Worker's Compensation Act and implicitly recognized that sexual harassment claims are not generally within the purview of the Workers' Compensation Act.

Three factors determine whether a judicial decision should apply retroactively or only prospectively: (1) whether the decision sought to be applied retroactively established a new principle of law either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed, (2) whether retroactive application of the new rule would further or retard its operation, and, (3) whether substantial inequity would result if the new law were applied retroactively. *City of Richmond v. Blaylock*, 247 Va. 250, 440 S.E.2d 598, 599 (1994); *Harper v. Virginia Dep't of Taxation*, 241 Va. 232, 237-240, 401 S.E.2d 868, 871-873 (1991). *Lichtman* and *Middlekauff* do not establish any new principle of law, but, instead, apply clear precedent and statutory law. The *Haddon* ruling is a dead end in the evolution of the law, and it addressed only one question: whether the fact that a tort committed by a fellow employee was intentional rather than negligent prevents an injury caused thereby from being an "injury by accident" within the coverage of the act. See, e.g., the concurring decision of Senior Justice Poff, with whom Justice Stevenson joins, in *Middlekauff* at pp. 397-398. *Middlekauff* merely reaffirmed a long-standing rule excluding gradually-incurred injuries from the definition of "injury by accident." *Middlekauff*, at page 397. This rule was first articulated by the Virginia Supreme Court in *Aistrop v. Blue Diamond Coal Co.*, 181 Va. 287, 293, 24 S.E.2d 546, 548 (1943). *Haddon* was overruled to the extent that it placed gradually incurred injuries within the definition of "injury by accident." The contrary rule had been uniformly followed since *Aistrop*. See, e.g., *Kraft Dairy Group, Inc. v. Bernardini*, 229 Va. 253, 256, 329 S.E.2d 46, 48 (1985); *Lane Co. v. Saunders*, 229 Va. 196, 199, 326 S.E.2d 702, 703-04

(1985); *Virginia Elec. & Power Co. v. Cogbill*, 223 Va. 354, 357-358, 228 S.E.2d 485, 487 (1982); *Badische Corp. v. Starks*, 221 Va. 910, 912-13, 275 S.E.2d 605, 606-07 (1981); *Tomko v. Michael's Plastering Co.*, 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

> In both *Merillat [Industries, Inc. v. Parks*, 246 Va. 429, 433, 436 S.E.2d 600, 602 (1993)] and *Middlekauff*, we reaffirmed the long-standing rule that an "injury by accident" for purposes of the Act does not include a gradually incurred injury. As conceded by the appellee here, we would have to expand this definition of "injury by accident" to encompass the extended period of injury alleged in this case. *Lichtman*, at page 115.

Defendants also rely on *Kelly v. First Va. Bank — Southwest*, 241 Va. ix, 404 S.E.2d 723 (1993), which is a curious case both in content and citation form. The three sentence *per curiam* opinion in that case was accompanied by six pages of dissenting opinion (two different opinions joined by a total of three justices), these dissenting opinions presage *Middlekauff* and *Lichtman*, and the dissenters are now in the majority. Justice Lacy, with whom Justice Whiting joined, dissenting, held that the trial court had inappropriately and erroneously applied *Haddon* and had failed to consider and decide the relevant issue based on long-standing principles of workers' compensation law. (Note that Justice Lacy was the author of the majority opinion in *Haddon*.) In the *Kelly* case, Mrs. Kelly alleged that a supervisor had engaged in "repeated acts and statements of a sexual nature that were offensive, humiliating, embarrassing, distressing, and harassing." *Kelly*, at page 723.

> When subjected to the proper analysis, [Kelly's] claim as alleged in her motion for judgment, does not satisfy the Act's coverage conditions. Therefore, the Act's exclusivity provision was inapplicable to Kelly and her cause of action should not have been barred.

*Kelly*, Lacy, with whom Whiting joins, dissenting, at page 725.

> If it was the intent of the court in *Haddon* to overrule *Braxton* and the precedent which has been clearly established and followed in this Commonwealth for over a half a century, the court should have done so explicitly.

*Kelly*, Hassell, dissenting, at page 727.

> As I understand the majority's order in this case and this court's decision in *Haddon*, female employees in Virginia are deemed to have accepted the risk of being victimized by sexual assault committed by their supervisors if those assaults happen to occur in the work place. I do not agree with this premise.

*Id.*, at page 728.

Cases in federal court interpreting Virginia law are also consistent in not applying a bar to sexual harassment claims, both before and after *Haddon*. See, e.g., *Roberts v. Southland Corp.*, C.A. No. 86-0418-R (E.D. Va. 1986) (the district court refused to dismiss claim, finding that sexually suggestive comments and improper physical conduct did not arise out of employment. The court held that claim was not barred by the Virginia Workers' Compensation Act, and allowed the case to proceed); *Allen v. Childress*, C.A. No. 89-00139-R (E.D. Va. 1989) (pendent state claims of assault and battery, intentional infliction of emotional distress and wrongful discharge based on injuries arising out of *"quid pro quo"* sexual harassment and hostile working environment were not barred by the Virginia Workers' Compensation Act. The injuries did not arise out of employment because employment does not carry the risk of such harassment); *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1989) (the Fourth Circuit reversed the district court and refused to apply the workers' compensation bar to a situation where an employee suffered injuries when attacked by her supervisor during a ride home from work and when she and the supervisor entered her home).

## C. *The Virginia Workers' Compensation Act does not bar Plaintiff's claims*

At the outset it should be noted that "the fundamental purpose of the [Workers' Compensation] act is to give compensation for accidental injuries within the hazards of the employment. The act does not apply to accidents outside the field of industrial hazards." *Feitig v. Chalkley*, 185 Va. 96, 102, 38 S.E.2d 73 (1946). The conditions of employment and the relations between employees and employers are subject to a wide range of laws. To name but a few: Virginia Human Rights Act, §§ 2.1-714 *et seq.*; Virginians with Disabilities Act, §§ 51.5-1 *et seq.*; Virginia Occupational Safety and Health Act, §§ 40.1-1 *et seq.*; and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2000e-17. The Workers' Compensation Act is but one constellation in the universe of laws governing the employer-

employee relationship. As the right of action for sexual harassment has evolved in the Commonwealth, it has taken the Supreme Court several turns to get the telescope of judicial review properly focused on the correct constellation, but it is now clear that the focus is no longer on *Haddon v. Metropolitan Life Ins. Co*, 239 Va. 397, 389 S.E.2d 712 (1989), and the Workers' Compensation Act. *Haddon* was not a new sun, but rather an appellate nova, whose light shone brilliantly in 1989, but which by 1994 has fizzled to galactic obscurity.

Subsection C of Virginia Code Annotated § 65.2-301, which was added to the statute on July 1, 1992, clearly states that, "Nothing in this title [Virginia Workers' Compensation Act] . . . shall . . . bar any action of law, that might otherwise exist, by an employee who is sexually harassed." "[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 711, 40 L. Ed. 2d 476, 488, 94 S. Ct. 2006 (1974). Under § 65.2-301(B), "an employee who is sexually assaulted . . . may elect to pursue an action at law against the attacker, even if the attacker is the assaulted employee's employer or co-employee . . . ."

Generally, legislation affecting remedies or procedures will be applied to pending actions. *Duffy v. Hartsock*, 187 Va. 406, 417, 46 S.E.2d 570 (1948); *Phipps v. Sutherland*, 201 Va. 448, 452, 111 S.E.2d 422 (1959); *Paul v. Paul*, 214 Va. 651, 653, 203 S.E.2d 123 (1974). "Substantive rights . . . are included within that part of the law dealing with creation of duties, rights, and obligations, as opposed to procedural or remedial law, which prescribes methods of obtaining redress or enforcement of rights." *Shiflet v. Eller*, 228 Va. 115, 120, 319 S.E.2d 750 (1984). As stated in *Starnes v. Cayouette*, 244 Va. 202, 211, 419 S.E.2d 669 (1992), "it is the limitation upon the plaintiff's right to recover that is purely procedural." *See Allen v. Mottley Construction Co.*, 160 Va. 875, 170 S.E. 412 (1933) (retroactive application of an amendment to a provision of the Workmen's Compensation Act that shortened the time allowed for a claimant to file a change in condition application). Consequently, legislation affecting the forum within which an action can be brought after it accrues is procedural or remedial, and Virginia Code § 65.2-301(C) applies to all of this case, even to those rights of action which accrued prior to July 1, 1992.

D. *The plaintiff's right of action does not "arise out of her employment"*

Even in the absence of § 65.2-301(C), the Plaintiff's right of action is not barred by the Workers' Compensation Act. The Court of Appeals of Virginia in *Carr v. City of Norfolk*, 15 Va. App. 266, 422 S.E.2d 417 (1992), examined Subsection A of Virginia Code Annotated § 65.2-301 in great detail. In that case, Carr, a City of Norfolk police officer, on July 26, 1990, was sexually assaulted by a fellow police officer during a shift change. Carr promptly reported the assault and a Warrant of Arrest was executed on her assailant. In upholding the Commission, the Court of Appeals, noted that the assault did not "arise out of" Carr's employment and, therefore, she had no remedy under the Workers' Compensation Act. The Court of Appeals stressed the language in Virginia Code Annotated § 65.2-301(A), which requires, as a pre-condition for a valid workers' compensation claim, that *"the nature of such employment substantially increases the risk of such assault."* The Commission found "no evidence in the record which demonstrate[d] that employment of [Carr] at the central desk of the Norfolk Police Department was work which by its nature substantially increases the risk of sexual assault, particularly by a fellow police officer." *Carr*, at page 418. Therefore, the assault did not "arise out of" Carr's employment, which means that Carr had no remedy for her injuries under the Workers' Compensation Act. *See also City of Richmond v. Braxton*, 230 Va. 161, 335 S.E.2d 259 (1985), and *Reamer v. National Service Industries, Inc.*, 237 Va. 466, 377 S.E.2d 627 (1989).

Like the Defendants here, Carr asserted that *Haddon v. Metropolitan Life Ins. Co.*, 239 Va. 397, 389 S.E.2d 712 (1990), and *Kelly v. First Va. Bank-Southwest*, 241 Va. ix, 404 S.E.2d 723 (1991), dictate that the exclusive remedy for an intentional tort of sexual assault is under the Workers' Compensation Act. The Court, relying upon the language of Virginia Code Annotated § 65.2-301 and "the well established principles which guide the determination of whether a particular injury 'arises out of' the employment" rejected this assertion. *Carr*, at page 418. *Carr* makes it clear that Virginia Code Annotated § 65.2-301 creates a narrow exception, which *allows* workers' compensation benefits where such benefits would not otherwise be appropriate. By implication, the code section makes it clear that claims such as Ms. Carr's and the Plaintiff's are primarily the domain of tort law and not workers' compensation law.

Virginia Code Annotated § 65.1-23.1 [later redesignated as Virginia Code Annotated § 65.2-301] was discussed in *Reamer v. National Service Industries*, 237 Va. 466, 377 S.E.2d 627 (1989). The employer, in a tort

claim, argued that the statute was enacted to "relieve victims of a sexual assault from the strictures of the rule in . . . assault cases . . . and most recently applied in *Braxton*, that is, that an injury is not compensable under the [Virginia Workers' Compensation] Act if the assault was purely personal." *Reamer*, 237 Va. at page 472. The Court rejected this explanation. "[T]he statutory 'presumption' is self-limiting; it applies only when it appears 'that the nature of such employment substantially increases the risk of [sexual] assault.' We need not suggest examples of such employment. Suffice it to say that nothing in the nature of employment in a furniture-rental store increases the risk of rape and forcible sodomy." *Id.* The same can be said of employment at Rich Products Corporation, a food processing and packaging plant.

*City of Richmond v. Braxton*, 230 Va. 161, 335 S.E.2d 259 (1985), confirms the holding in *Reamer*. In *Braxton*, an employee filed a claim for workers' compensation benefits for an injury resulting from a sexual assault on Ms. Braxton by her supervisor. The Court stated, "[The applicable test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [worker] would have been equally exposed apart from the employment." *Braxton*, at page 261. Quoting the commission, the Court held, "[i]t is not sufficient to find that the employment is what brought the parties in close proximity . . . there must be a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Braxton*, at pages 261-262. The Court reversed the award of the commission and dismissed the Claimant's application for workers' compensation benefits. *Braxton*, at page 262.

*Carr, Braxton, Kelly*, and *Reamer* all predate the enactment of Virginia Code § 65.2-301(C), which makes it patently clear that "nothing in this title [Workers' Compensation Act] shall . . . bar any action at law, that might otherwise exist, by an employee who is sexually harassed." The jurisdictional questions the courts wrestled with in those cases, deriving from the "arising out of" analysis, has now been clearly resolved by the General Assembly.

E. *Virginia does not recognize claims for the negligent infliction of emotional harm without physical injury*

In *Womack v. Eldridge*, 215 Va. 338, 343, 210 S.E.2d 145 (1974), the Supreme Court of Virginia adopted the following rules governing liability for emotional distress caused by a non-tactile tort:

We adopt the view that a cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second) of Torts, *supra*, at 77.

Under *Hughes v. Moore*, 214 Va. 27, 34, 197 S.E.2d 214, 219 (1973), plaintiff must allege physical injury, or at least symptoms or manifestations of physical injury, not just symptoms or manifestations of an underlying emotional disturbance. *See Myseros v. Sissler*, 239 Va. 8, 12, 387 S.E.2d 463, 466 (1990). "[I]nability to sleep at night, loss of appetite, significant weight loss, clinical depression, aversion to public places and crowds, and reclusiveness," all of which plaintiff proposes in her motion for leave to amend, are " 'typical symptoms of an emotional disturbance,' for which there can be no recovery under *Hughes v. Moore* in the absence of resulting physical injury." *Myseros*, 239 Va. at 12, 387 S.E.2d at 466.

It remains to be proven as to whether Plaintiff has a physical injury, but this is academic, because if assault and battery is proven, which is a tactile tort, mental anguish is an element of recovery. Mental anguish is a person's mental reaction to a loss or injury, 22 Am. Jur. 2d, *Damages*, § 251; *accord Russo v. White*, 214 Va. 23, 27, 400 S.E.2d (1991), and it may be inferred from the nature of the injury or loss. *See, e.g., Bell v. Kirby*, 226 Va. 641, 645-646, 311 S.E.2d 799 (1984) (personal injury); and *Gamble v.*

*Hill*, 208 Va. 171, 180, 156 S.E.2d 888 (1967) (wrongful death of young girl without direct proof of mental anguish). "When the case is a proper one for the recovery of damages for mental anguish . . . any competent evidence which tends to establish or dispute the fact that the plaintiff suffered mental anguish as a result of the defendant's act is admissible." 22 Am. Jur. 2d, *Damages*, § 932.

"[F]or purposes of proving grief, mental anguish, or suffering of a surviving parent (or statutory beneficiary), the Courts look with favor upon expert psychiatric testimony to provide a reasonably reliable basis for award of such damages, and to prevent the jury from falling into speculation, conjecture, and sympathy." Annotation, *Recovery of Damages for Grief or Mental Anguish Resulting from Death of Child — Modern Cases*, 45 A.L.R.4th 234, 245 (1986).

F. *Assault and battery and sexual battery are the same action*

"A battery is a touching, however slight, of another person in a rude, insulting or angry way." *Model Jury Instructions — Civil*, vol. II, no. 36.000. The allegations of Count II (Sexual Assault and Battery) are subsumed with Count I (Assault and Battery), and hereafter will be treated as one count.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. Defendants' demurrers to Counts I and II based on the bar of the Virginia Workers' Compensation Act are overruled.

2. Defendants' demurrers to Count III (intentional infliction of emotional harm) are overruled.

3. Defendants' demurrers to Count IV (negligent infliction of emotional harm) are sustained.