COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Senior Judge Overton


RUTH LINDSAY
                                   MEMORANDUM OPINION*
v.    Record No. 2152-01-1              PER CURIAM
                                     DECEMBER 11, 2001
DOMESTIC LINEN SUPPLY & LAUNDRY AND
 TRAVELERS INDEMNITY COMPANY OF ILLINOIS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             (John H. Klein; Montagna Breit Klein Camden,
             L.L.P., on brief), for appellant.

             (Allen Lotz; Huff, Poole & Mahoney, P.C., on
             brief), for appellees.


     Ruth Lindsay (claimant) contends the Workers' Compensation

Commission erred in finding that she failed to prove she

sustained an injury by accident arising out of her employment on

June 22, 2000.  Upon reviewing the record and the briefs of the

parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the commission's decision.

Rule 5A:27.

     "A finding by the Commission that an injury [did or did not

arise] out of and in the course of employment is a mixed finding

of law and fact and is properly reviewable on appeal." Dublin

Garment Co., Inc. v. Jones, 2 Va. App. 165, 167, 342 S.E.2d 638,

─────────────────────
     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

638 (1986). However, unless we can say as a matter of law that claimant's evidence sustained her burden of proof, the commission's findings are binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

"The claimant [has] the burden of establishing, by a preponderance of the evidence, and not merely by conjecture or speculation, that she suffered an injury by accident which arose out of . . . the employment." Central State Hosp. v. Wiggers, 230 Va. 157, 159, 335 S.E.2d 257, 258 (1985). The claimant "must show that a condition of the workplace either caused or contributed to her fall." Southside Virginia Training Ctr. v. Shell, 20 Va. App. 199, 202, 455 S.E.2d 761, 763 (1995). This analysis "excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the [claimant] would have been equally exposed apart from the employment." R & T Investments, Ltd. v. Johns, 228 Va. 249, 253, 321 S.E.2d 287, 289 (1984).

Claimant testified that on June 22, 2000, while working for employer as a district manager, she stopped at Interstate Warehousing to make an unsolicited sales call. She testified that she parked her truck and then walked to what she thought was the front door. After realizing the door was locked, she turned to leave and her "right foot hung into a crack in the

sidewalk." She stated that the crack "grabbed a hold of my right shoe, toe end of the shoe" and that this caused her to "trip" and "fall." She testified that her "right leg sandwiched my left foot between the curb and the sidewalk. Actually right on the curb." She stated that she fell towards the parking lot and her left foot was "crushed" under her right leg.

Claimant identified numerous photographs she claimed to have taken the day after the incident. The photographs depict a concrete sidewalk area between a parking lot and three concrete steps leading up to a flat concrete area immediately outside a building with a glass panel door. The sidewalk has "seams" perpendicular to the parking lot. The concrete sections shown in the photographs appear to be level, with a few minor cracks in the curbing and adjacent structures.

Claimant identified one particular seam as being the cause for her trip and fall. That seam has a small perpendicular crack running from it and parallel to the parking lot. Claimant did not state exactly how the crack caused her fall, although she claimed that the concrete section containing the crack was higher than the section immediately next to it.

Paul Denver, insurer's investigator, inspected the area and took photographs where claimant allegedly fell. He located the seam identified by claimant and ran his foot over that seam and crack. He found that neither of the concrete sections was

higher than the other.  He noticed "no imperfections in the walk itself."  He stated that the crack identified by claimant did not stand out to him at the time of his inspection.

The medical records reflect that claimant sought treatment with Dr. G. Bayley Royer on June 22, 2000.  Dr. Royer recorded a history of "left ankle injury, roughly 2 hr ago.  Was walking at work and stepped off curb incorrectly.  Twisted her left leg inward."  Dr. Royer diagnosed left ankle sprain.

On June 27, 2000, Dr. Kent E. Willyard examined claimant and recorded a history of "walking at work and stepped off a curb and twisted her left foot in an apparent inversion injury . . . .  She states she simply slipped on the curb."  Dr. Willyard referred claimant to orthopedic surgeon, Dr. Boyd W. Haynes, who recorded a history on July 25, 2000 of "injury to her left foot when she was going up to do a cold call on June 22 . . . , she tripped with her foot in a plantar flexed manner and pinned her foot against the concrete curb and her body."

In her July 28, 2000 recorded statement given to the insurer, claimant described the June 22, 2000 incident as follows:

> I was cold calling out in Oakland Industrial Park door, uh, business to business.  Um, I was going into --- I parked my truck in front of Interstate Warehousing . . . I parked my truck, and I walked into what I thought was the front door, which was locked, and I knew that this wasn't the front door.  So as I turned around, my right

- 4 -

foot shoe hung into part of the concrete sidewalk and through [sic] me off balance. My whole body twisted and my right leg fell on my left leg, which landed sandwiched between the curb and sidewalk on my right foot.

With respect to the cause of her fall, claimant stated:

Well, it hung on something, because it tripped me enough to make me lose my balance. I'm not gonna say it's the concrete, but I was on the sidewalk. I don't know if it was an indenture in the sidewalk. I don't, I, I haven't driven back there to look at it. All I know is my shoe, my right shoe made me stumble. And it, and it hung on, it, it caught on something on the sidewalk that made me stumble.

Claimant then stated that it was the sidewalk that caused her to fall, but she was not sure what it was that made her foot catch and throw her off balance. She believed that the sidewalk was not "level ground," but she could not identify any debris that caused her to fall. In the claim filed with the commission on August 14, 2000, claimant indicated the cause of her fall was "uneven concrete."

The commission examined the photographs and concluded:

[They] do not by themselves establish a defect. . . . The photographs . . . do not reflect any variation in the height of the two concrete sections that abutted to make the suspect seam. The photographs do not reflect the actual size of the various features, and neither side offered any precise measurements of height, length, width, or whether the seam or crack was level or unlevel.

In addition, the commission rejected claimant's hearing testimony, finding as follows:

> During [claimant's] initial medical treatment, the claimant reported to both Dr. Bayley [sic] and Dr. Willyard that her injury occurred when she twisted her ankle while stepping off of a curb. Nothing about the curb was implicated at the hearing, and the claimant now claims a "crush" injury, rather than a "twist" injury. The first reference to a "trip" in the medical history appears more than a month after the accident, at which point the claimant describes having pinned her foot on the curb.

> During the hearing, the claimant clearly testified that she took her photographs on the day after the accident, and that she visited the site before giving her recorded statement to the insurer. The transcript of that recording, however, reveals that the claimant attributed her accident to tripping on "something," but would not at that time "say it was the concrete." She told the insurer at that time that she did not know whether her accident was caused by an "indenture" in the concrete, stating that she had not been back to look at the accident location.

> The claimant first reported having tripped in a specific way, from a specific defect, at the evidentiary hearing. This testimony directly contradicts the contemporaneous accident history reported to the claimant's physicians, and there is no explanation for the claimant's ability to recall such a specific accident description at the hearing -- almost eight months after the accident -- and her inability to do so only one month after the accident.

The commission weighed the evidence and found inconsistencies between claimant's hearing testimony, the

- 6 -

initial histories of her accident reported to Drs. Royer and Willyard, the content of her recorded statement to the insurer, and Denver's testimony. Based upon these inconsistencies, coupled with the lack of any evidence of any variation in height of the sidewalk and the lack of any evidence of an apparent defect in the sidewalk as shown in the photographs, the commission, as fact finder, was entitled to reject claimant's testimony and to conclude that she "failed to prove that she was exposed to a risk of injury peculiar to her employment while on the premises of Interstate Warehousing on June 22, 2000, and failed to prove that her accidental injuries were causally related to such a risk."

Absent claimant's testimony, no evidence established that any condition of her workplace either caused or contributed to her fall. Specifically, no evidence established that a defect in the sidewalk caused her to trip and fall. Accordingly, we cannot find as a matter of law that claimant proved she sustained an injury by accident arising out of her employment on June 22, 2000.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>