COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick,* Judges Benton, Coleman,
     Moon, Willis, Elder, Bray, Annunziata and Overton
Argued at Richmond, Virginia


BASSETT-WALKER, INC.
                                        OPINION BY
v.   Record No. 1002-96-3          JUDGE LARRY G. ELDER
                                      NOVEMBER 25, 1997
SHIRLEY JEAN WYATT


                  UPON REHEARING EN BANC

      FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Richard D. Lucas (Carter, Brown & Osborne,
          P.C., on brief), for appellant.

          Stephen G. Bass (Carter, Craig, Bass,
          Blair & Kushner, P.C., on brief), for
          appellee.



     Bassett-Walker, Inc. (appellant) appeals a decision of the

Workers' Compensation Commission (commission) awarding benefits

to Shirley Jean Wyatt (claimant).  It contends that the

commission erred when it concluded that claimant's injury arose

out of her employment.  A panel of this Court agreed with

appellant and reversed the commission's decision.  See

Bassett-Walker, Inc. v. Wyatt, No. 1002-96-3, slip op. at 3.

(Va. Ct. App. March 4, 1997).  We granted claimant's petition for

a rehearing en banc and now affirm the commission's award.


_____

        *When the case was argued Judge Moon presided.  Judge
Fitzpatrick was elected Chief Judge effective November 19, 1997.

FACTS

Claimant was a knitter whose work involved operating knitting machines. Rolls of yarn were placed on creels attached to the machines, and the machines functioned by knitting yarn fed into them from the creels. Each machine held multiple creels of yarn, some of which were "as high as you could reach from the floor," while the lowest row of yarn was about "two inches off the floor." The machines consumed numerous rolls of yarn during the course of claimant's twelve hour shift. Each time a roll of yarn was emptied, claimant was responsible for placing a new roll on the empty creel. In order to reload the yarn on the bottom-most creels of a machine, claimant was required to perform a deep knee-bend to reach their location two inches above the floor. At the lowest point of each knee-bend, claimant's weight rested on her heels, her knees did not touch the floor, and her "rear end [was] lower than [her] knees." The operation of the knitting machines required claimant to perform these deep knee-bends approximately 200 times each twelve hour shift.

On March 13, 1995, claimant was performing her duties when the machine she was operating emptied a roll of yarn. Claimant placed a new roll of yarn on the creel and "squatted down to tie the bottom in." Claimant was not holding anything in her hand. Before she had reached the deepest position of her knee-bend, claimant heard a pop and felt a tearing sensation in her left

knee.  When she tried to stand up, she was unable to straighten her left leg.  Claimant's injury was diagnosed as a torn medial meniscus, and she underwent arthroscopic surgery to correct the injury.

Claimant filed a claim for benefits.  Following a hearing, a deputy commissioner denied her claim, concluding that claimant's injury did not arise out of her employment.  The deputy commissioner found that "the conditions of claimant's employment did not contribute to her injury" and that her injury occurred during a "normal squatting motion."

Claimant appealed, and the commission reversed.  The commission concluded that claimant's injury was causally related to her work reloading the bottom-most creels of the knitting machine.  It found that "claimant's knee injury followed as a natural incident of the work and could be reasonably seen as resulting from exposure occasioned by the nature of the employment, which required her to squat approximately 200 times per shift."  It also found that the job-related hazard that contributed to her injury was the "need to squat in order to perform her work, coupled with the number of times that maneuver was required per shift and the length of time which she had to maintain the position."

## II.

### INJURY "ARISING OUT OF" EMPLOYMENT

Appellant concedes that claimant suffered an injury during

the course of her employment. It contends, however, that the commission erred when it concluded that claimant's injury arose out of her employment. Appellant argues that claimant's risk of injury while performing deep knee-bends at work was no greater than the risk to which she was exposed outside of her job and that her injury occurred while performing a "normal squat" typical of those she would perform at home. Because the record indicates that claimant was exposed to an increased risk of tearing cartilage in her knees that was peculiar to her employment and that this risk contributed to her injury, we disagree with appellant's arguments.

In order to receive benefits under the Workers' Compensation Act, a claimant must prove by a preponderance of the evidence that he or she suffered an injury by accident that arose out of and in the course of the employment. See County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989) (holding that "arising out of" and "in the course of" are separate and distinct elements). An injury "arises out of" the employment if a causal connection exists between the claimant's injury and "the conditions under which the employer requires the work to be performed" or a "significant work related exertion." Grove v. Allied Signal, Inc., 15 Va. App. 17, 19, 421 S.E.2d 32, 34 (1992); Plumb Rite Plumbing Service v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989) (interpreting Johnson).

> "'Under this test, if the injury can be seen
> to have followed as a natural incident of the
> work and to have been contemplated by a

reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.'" Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938), quoting In re McNicol, 215 Mass. 497, 499, 102 N.E. 697, 697 (1913).

Baggett Transp. Co. of Birmingham, Alabama v. Dillon, 219 Va. 633, 638, 248 S.E.2d 819, 822 (1978). Whether an injury arises out of the employment is a mixed question of law and fact and is reviewable on appeal. Barbour, 8 Va. App. at 483, 382 S.E.2d at 305.

We hold that claimant's knee injury arose out of her employment. The unique demands of operating the knitting machine provided the "critical link" between claimant's employment and her injury. In order to load new rolls of yarn in the lowest creels of her knitting machine, claimant was required to perform deep knee-bends during each twelve hour shift. The circumstantial evidence indicated that this knee-bending or "squatting" to reach a position close to the ground was a condition of the work to be performed which exposed claimant to

the risk of tearing cartilage in her knees every time she performed the task. Although claimant testified that the motion of her knee-bending at work resembled a knee-bend that she would perform "to pick up something at home," bending one's knees until a point two inches from the ground is within reaching distance is both extreme and uncommon. Moreover, the record did not establish that claimant performed deep knee-bends to reach positions just inches from the floor in order to load yarn on creels while she was away from her employment. The mere fact that an unusual movement required by one's employment is occasionally done outside the workplace does not necessarily make a resulting workplace injury non-compensable. Thus, the knee-bending demanded of claimant when operating the knitting machines was a condition to which she was not equally exposed apart from her employment. Cf. Grove, 15 Va. App. at 20-21, 421 S.E.2d at 34-35 (claimant's stooping and crouching incidental to fixing pipes exposed him to a risk of back injury peculiar to his employment); Richard E. Brown, Inc. v. Caporaletti, 12 Va. App. 242, 245, 402 S.E.2d 709, 711 (1991) (claimant's cutting and fitting motions performed in a bent over position while installing a 100-pound furnace exposed him to a risk of back injury unique to his employment).

In addition, the record indicates that the risk associated with claimant's operation of the knitting machine was a contributing cause of her injury. Claimant was in the act of

-6-

performing a deep knee-bend to reach the lowest row of yarn on the machine when she heard a pop and felt a tearing sensation in her left knee. The acute angle knee-bend required to operate the knitting machine increased the likelihood that claimant would tear the medial meniscus in her knee, and the injury to claimant's knee can be fairly traced to this increased risk.

This case is distinguishable from those cases in which the claimant's injury occurred during the course of the employment but was not causally related to a condition or exertion peculiar to the job. See Johnson, 237 Va. at 184-85, 376 S.E.2d at 75-76 (no evidence established that an "actual risk" of employment caused claimant's knee to "give way" and claimant to fall to the floor); United Parcel Service of America v. Fetterman, 230 Va. 257, 259, 336 S.E.2d 892, 893 (1985) (no evidence established that back strain that occurred when claimant bent over to tie his shoe was caused by a hazard peculiar to the workplace); Barbour, 8 Va. App. at 484, 382 S.E.2d at 306 (no evidence established that back strain that occurred when claimant bent over to pick up a piece of plastic pipe was caused by a work-related risk or exertion). Unlike the injuries in those cases, claimant's knee injury did not merely occur during the course of her employment as a knitter without any link to her working environment. The evidence established a causal connection between the unique demands of operating the knitting machine and the torn cartilage in claimant's left knee. Operating the knitting machine required

claimant to bend her knees until her "rear end [was] lower than [her knees]" and her weight rested on her heels. This manner of reloading the lowest creels with yarn increased her risk of tearing cartilage in her knee and directly contributed to cause her injury. Cf. Marion Correctional Treatment Ctr. v. Henderson, 20 Va. App. 477, 480-81, 458 S.E.2d 301, 303 (1995).

Appellant contends that compensation of claimant's injury is barred on another ground. It argues that the commission's findings indicate that the injury was a cumulative trauma caused by a repetitive motion. We disagree.

Appellant misconstrues the findings made by the commission. Although job-related impairments resulting from cumulative trauma caused by repetitive motion are not compensable under the Act, Stenrich Group v. Jemmott, 251 Va. 186, 199, 467 S.E.2d 795, 802 (1996), the commission did not conclude that claimant's injury resulted from a cumulative trauma. Instead, the commission found that the medial meniscus in claimant's left knee was damaged once, on March 13, and that this single injury was causally related to the risk of tearing cartilage associated with performing deep knee-bends. The commission characterized the extreme squatting as a "causative danger" and "a risk connected with the employment" and did not find that the knee-bends injured claimant gradually over time.

We hold that credible evidence supports the commission's finding that the tear in claimant's medial meniscus was caused

suddenly when she performed the deep knee-bend on March 13. Claimant testified that she heard a pop and felt a painful tearing sensation in her left knee as she squatted to reload the knitting machine on March 13. On March 21, Dr. Charles Kelshaw examined claimant and concluded that she had "medial meniscus damage" in her left knee. Dr. Peter L. Perry operated on claimant's knee on August 4 and discovered "a complex tear of the entire posterior horn of the medial meniscus." Dr. Perry later opined that this tear was related to the deep knee-bend performed by claimant on March 13. No evidence in the record indicates that the tear in her medial meniscus occurred gradually as a result of cumulative trauma rather than suddenly due to the particular knee-bend at issue on March 13. Because the evidence in the record supports these findings, they cannot be disturbed on appeal. See Code § 65.2-706(A).

In light of the foregoing reasons, we affirm the decision of the commission.

Affirmed.

Moon, J., dissenting.

I dissent for the reasons articulated in the March 4, 1997 panel opinion. Wyatt testified that the injury occurred before she reached a squatting position and that the motion was no different from those she carried out in everyday life in non-employment-related circumstances:

Q. And had you gotten down to the full low position when you heard the pop?

A. No, sir.

Q. All right. Where you somewhere in between the high and the low?

A. Yes, sir.

      *    *    *    *    *    *    *

Q. So you had not even reached your full squatted position at the – – –

A. No, sir.

Q. – – time this popped; is that correct?

A. Right.

      *    *    *    *    *    *    *

Q. And, is that a squat that you would make several times an hour?

A. Yes.

Q. And, is that a squat also that you make if you had to bend to pick up something at home, pick up around the house or whatever? Just a normal squat?

A. Yes.

Where, as here, there is no significant exertion, the action of squatting involves no awkward position, and no condition

–10–

peculiar to the workplace causes the injury, the injury cannot be said to have "aris[en] out of" employment.  <u>County of Chesterfield v. Johnson</u>, 237 Va. 180, 185-86, 376 S.E.2d 73, 76 (1989); <u>Grove v. Allied Signal, Inc.</u>, 15 Va. App. 17, 19-20, 421 S.E.2d 32, 34 (1992); <u>Plumb Rite Plumbing Service v Barbour</u>, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989).  I therefore would reverse the commission's award of compensation.