COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Lemons and
          Senior Judge Duff
Argued at Alexandria, Virginia


LEAR CORPORATION WINCHESTER AND
 EMPLOYERS INSURANCE OF WAUSAU
                              MEMORANDUM OPINION* BY
v.     Record No. 2139-98-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      MAY 11, 1999
ANNA M. McFARLAND


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Cathleen P. Welsh (Wharton, Aldhizer &
            Weaver, P.L.C., on brief), for appellants.

            Nikolas E. Parthemos (Parthemos & Bryant,
            P.C., on brief), for appellee.


     In this workers' compensation case, Lear Corporation

Winchester and Employers Insurance of Wausau (collectively

"employer") appeal a decision of the Workers' Compensation

Commission awarding benefits to Anna M. McFarland ("claimant").

Employer contends that the commission erred in finding that

claimant's injury arose out of her employment.  Finding no

error, we affirm the commission's decision.

                              I.

     "Under familiar principles, we view the evidence in the

light most favorable to the party prevailing below.  The

          *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

commission's findings of fact will be upheld on appeal if they are supported by credible evidence." Uninsured Employer's Fund v. Clark, 26 Va. App. 277, 280, 494 S.E.2d 474, 475 (1998). So viewed, the evidence established that on January 27, 1997, claimant was working as a "relief operator" engaged in the assembly of cardboard boxes. She was five-feet, four-inches tall, and weighed 200 pounds. The boxes were described as two and one-half feet tall and five feet long, and each box weighed approximately one-fourth pound. As a relief operator, claimant would retrieve two or three pre-cut boxes from a skid. The boxes were pulled apart and the bottom flaps were folded toward the center and taped closed. Claimant assembled boxes as "fast as [she] could" in approximately two-hour increments.

Claimant testified that as she made the boxes, her body was in a "squatting" position, both knees bent, and her waist bent at about a forty-five degree angle. She would hold her right knee on the side of the box to keep it from moving. Claimant also demonstrated this technique for the deputy commissioner, who described claimant's physical position as "a slight squat, knees slightly flexed."

At the time of her injury, claimant had been in the process of retrieving and making boxes for approximately 25-30 minutes. Claimant finished assembling one box and as she was straightening her body to an upright position, she felt "a sharp

stabbing pain" in her lower back on the right-hand side.  She stopped working, took some "Tylenol" and attempted to return to work.  However, she was unable to continue working and was taken to the Winchester Medical Center emergency room for medical treatment.

At the hearing before the deputy commissioner, employer introduced into evidence a videotape of another employee assembling cardboard boxes.  After viewing the videotape, claimant testified that she did not put together boxes in the same manner as the other employee.[1]

The deputy commissioner found that at the time of her injury, claimant "performed her work in an awkward position," which was "sustained for repeated periods of time."  The deputy commissioner concluded claimant's injury arose out of her employment and, therefore, awarded compensation benefits.  The full commission agreed:

---

[1]Claimant testified as follows:

> Q.  . . . All right.  You saw her technique with how much bending she was doing and what she was doing with her legs.  Is her technique identical to your technique or are there differences?
> A.  There is [sic] differences.
> Q.  Okay.  Tell us what differences there are?
> A.  Well, you know, she just bends over from the waist and do [sic] them.  But I usually put my knee up against the box, you know, and bend and tape my box up.

The employer primarily argues that the claimant's injury did not arise out of her employment. We agree with the Deputy Commissioner that it did.

The accident occurred after the claimant was partially squatting and bending over, at a forty-five degree angle, bracing a box with her knee. She felt a sharp stabbing pain in her lower back, when she was straightening up from this position. She had done this work for approximately one-half hour.

The commission recognized that "simple acts of walking, bending or turning without any other contributing environmental factors are not risks of employment." However, the commission concluded that "[claimant's] injury did not occur from just straightening. She had worked in an awkward position: bent at the waist, slightly crouching with her right knee against a box for about thirty minutes, and was injured when she rose from this position."

## II.

Employer contends that the evidence does not support the commission's finding that claimant sustained a compensable injury arising out of her employment. Employer argues that claimant's injury resulted from a "simple and common movement" that should not be considered a risk of her employment. We disagree.

In order to receive compensation benefits, claimant must prove that she suffered an injury by accident that arose out of

and in the course of the employment. See County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989). An injury "arises out of" the employment if a causal connection exists between the claimant's injury and "the conditions under which the employer requires the work to be performed," Grove v. Allied Signal, Inc., 15 Va. App. 17, 19, 421 S.E.2d 32, 34 (1992), or "that some significant work related exertion caused the injury." Plumb Rite Plumbing Service v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989).

> "Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

R & T Investments, Ltd. v. Johns, 228 Va. 249, 252-53, 321 S.E.2d 287, 289 (1984) (citations omitted).

In Richard E. Brown, Inc. v. Caporaletti, 12 Va. App. 242, 402 S.E.2d 709 (1991), we determined whether an employee's cutting and fitting motion performed in a bent over position while installing a 100-pound furnace exposed him to a risk of back injury unique to his employment. Affirming the commission's award of benefits, we concluded the employee's need to work in the bent over position and to extract himself from that position was a "hazard to which [the employee] would not have been equally exposed apart from the conditions of employment." Id. at 245, 402 S.E.2d at 711 (citations omitted). See also Bassett-Walker, Inc. v. Wyatt, 26 Va. App. 87, 93-94, 493 S.E.2d 384, 387-88 (1997) (concluding that claimant's knee-bending or "squatting" to reach a position close to the ground to load yarn on a knitting machine was a condition of work that exposed claimant to risk of injury); Grove, 15 Va. App. at 20-21, 421 S.E.2d at 34-35 (holding that claimant's stooping and bending incidental to fixing pipes exposed him to a risk of back injury particular to his employment).

In the instant case, credible evidence supports the commission's finding that claimant worked in an awkward position, "bent at the waist, slightly crouching with her right knee against a box." Claimant testified that as she made the boxes, her body was in a "squatting" position, both knees bent, and her waist bent at about a forty-five degree angle. She

would hold her right knee on the side of the box to keep it from moving.

Additionally, claimant demonstrated this technique to the deputy commissioner and the full commission had the benefit of the deputy commissioner's contemporaneous description of her physical position (i.e., "A slight squat. Knees slightly flexed."). We will not substitute our judgment for that of the trier of fact, who had an opportunity to observe the witnesses and evaluate their credibility. See Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 382, 363 S.E.2d 433, 437 (1987), appeal after remand, 9 Va. App. 120, 384 S.E.2d 333 (1989).

Nevertheless, employer contends that there is nothing awkward or unusual about claimant's work activity because she "bent in the same or similar fashion" outside the work environment. Contrary to employer's position, claimant testified on re-direct that in none of the activities she performed at home was she stooped or bent at the waist with her knee propped against something. Moreover, "[t]he mere fact that an unusual movement required by one's employment is occasionally done outside the workplace does not necessarily make a resulting workplace injury non-compensable." Bassett-Walker, 26 Va. App. at 94, 493 S.E.2d at 387-88.

Credible evidence supports the commission's findings and, accordingly, we affirm the award of compensation benefits.[2]

<u>Affirmed.</u>

---

[2]Additionally, employer maintains that the commission erred in finding that claimant was "bent over in [an awkward] position for thirty minutes."  In this regard, employer misconstrues the findings made by the commission.  While the commission noted that claimant was working in an awkward position for an extended time, the record is clear that claimant worked approximately thirty minutes before she was injured.  Claimant described the procedure in assembling the boxes, which included bending her waist and knees while she taped the boxes <u>and</u> straightening her body when she completed a box.