COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Clements
Argued at Salem, Virginia


DAN RIVER, INC.
                                  MEMORANDUM OPINION* BY
v.    Record No. 1899-01-3        JUDGE JEAN HARRISON CLEMENTS
                                          MAY 7, 2002
TERESA G. MORRISON


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            James A. L. Daniel (Elizabeth B. Carroll;
            Daniel, Vaughan, Medley & Smitherman, P.C.,
            on brief), for appellant.

            No brief or argument for appellee.


     Dan River, Inc. (employer) appeals an award by the Workers'

Compensation Commission (commission) of medical benefits to

Teresa G. Morrison (claimant).  On appeal, employer contends the

commission erred in concluding that claimant sustained a

compensable injury by accident arising out of and in the course

of her employment.  For the reasons that follow, we reverse the

commission's award of benefits.

     As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

value, this opinion recites only those facts and incidents of the

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

proceedings as necessary to the parties' understanding of the disposition of this appeal.

## I.    BACKGROUND

"By well established principles, we view the evidence in the record in the light most favorable to the party prevailing before the commission."  Boys and Girls Club of Virginia v. Marshall, 37 Va. App. 83, 85, 554 S.E.2d 104, 105 (2001).  So viewed, the evidence established that, in June of 2000, claimant was working for employer as a pillowcase folder.  She had worked for employer for twenty-one years, the last ten years folding pillowcases. Normally, claimant used a folding machine to fold pillowcases, but, in June of 2000, she began, on occasion, to also fold pillowcases by hand.

Claimant, who is six feet one and one-half inches tall, demonstrated the hand-folding process to the deputy commissioner and described the process as follows:  First, she removes the pillowcase from a dolly and lays it flat on her table, which is "about thirty-six inches high."[1]  She then "flip[s] the bottom part up," "take[s] the side up to the other side," "take[s] from one side to the next side and then back to the other side," and flips the "bottom up to the top."  On days she folded pillowcases

---

[1] The deputy commissioner stated in his written opinion that the table claimant used to fold pillowcases by hand was "thirty-two inches from the floor."  We find no evidence in the record to support this finding.  Claimant herself explicitly testified that the table she used for hand-folding pillowcases was "about thirty-six inches high."

-

by hand, claimant was expected to fold at least 2,295 king-size pillowcases.

On the first day claimant folded pillowcases by hand in June 2000, she experienced a pain in her left arm "going up toward [her] elbow." Claimant testified that she "first felt" the pain when, in the course of folding a pillowcase by hand, she "flipped the bottom [of the pillowcase] up to the top." Claimant reported the discomfort to her supervisor but was able to keep working. She continued to experience pain in her left arm throughout the summer and fall of 2000 whenever she folded pillowcases by hand.

After complaining to her supervisor several times about the pain in her arm, claimant was sent to employer's health clinic on September 13, 2000. The clinic referred her to Piedmont PrimeCare, where she was examined and treated by Dr. Ivan Lazo. Noting that claimant's discomfort in her left arm was due to her change of jobs, Dr. Lazo diagnosed claimant's condition as tendonitis of the left elbow and prescribed Naprosyn to treat it.

Eventually, claimant was referred to Danville Orthopedic Clinic, where Dr. Ronald Hodges examined her on November 30, 2000. Noting that claimant's pain in her left arm began when she switched to folding pillowcases by hand, Dr. Hodges opined that claimant's ongoing condition was "a repetitive strength sprain injury." "When she starts this repetitive motion of hand folding," Dr. Hodges reported, "she gets enough muscle edema in her forearm to cause a radial nerve compression." He gave her

-

Vioxx to take when she folded pillowcases by hand and recommended that her work station be ergonomically modified to prevent further problems.

Claimant sought compensation for her medical expenses related to the injury to her left arm. Relying on claimant's "credibl[e]" and "unrebutted" testimony and the fact that claimant's testimony was "consistent with the medical record," the deputy commissioner ruled that claimant suffered a compensable industrial injury to her left arm on June 1, 2000, and awarded her the medical expenses directly related to that injury and the resulting tendonitis.

On review, although one commissioner believed the evidence failed to prove claimant's injury arose out of her employment, the majority of the commission affirmed the deputy commissioner's finding and award. Based on claimant's unrebutted testimony "concerning the sudden onset of her symptoms" and Dr. Lazo's report corroborating that testimony, the majority concluded that the deputy commissioner correctly found that claimant proved an injury by accident arising out of and in the course of her employment.

This appeal by employer followed.

## II.  ANALYSIS

To recover benefits under the Workers' Compensation Act, the employee must prove "by a preponderance of the evidence that [she] suffered an injury by accident 'arising out of and in the course of [her] employment.'"  Falls Church Const. Corp. v. Valle, 21 Va.

-

App. 351, 359-60, 464 S.E.2d 517, 522 (1995) (quoting Code § 65.2-101).  Employer argues, on appeal, that claimant is not entitled to medical benefits because she failed to prove her injury arose out of her employment.  We agree.

"Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal."  Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).  However, "[b]ecause the finding of whether an injury 'arose out' of the employment is a mixed question of law and fact, we must determine whether the facts presented are sufficient as a matter of law to justify the [c]ommission's finding."  Hercules, Inc. v. Stump, 2 Va. App. 77, 78, 341 S.E.2d 394, 395 (1986).

"The phrase 'arising out of' pertains to the origin or cause of an injury."  Combs v. Virginia Elec. & Power Co., 259 Va. 503, 508, 525 S.E.2d 278, 281 (2000).  To determine whether an injury arose out of employment, "we apply an 'actual risk test,' meaning that the employment must expose the employee to the particular danger causing the injury, notwithstanding the public's exposure generally to similar risks."  Id. at 510, 525 S.E.2d at 282. Accordingly,

> [a] claimant's injury arises out of the
> employment if the manner in which the
> employer requires the work to be performed is
> causally related to the resulting injury.
> See Bradshaw v. Aronovitch, 170 Va. 329, 335,
> 196 S.E. 684, 686 (1938).  An injury does not
> arise out of the employment when it "cannot

-

> fairly be traced to the employment as a contributing proximate cause and . . . comes from a hazard to which the workmen would have been equally exposed apart from the employment. <u>The causative danger must be peculiar to the work and not common to the neighborhood</u>." <u>Id.</u> (emphasis added) (citation omitted).

<u>Vint v. Alleghany Regional Hosp.</u>, 32 Va. App. 60, 63-64, 526 S.E.2d 295, 297 (2000).

Here, claimant presented no evidence that a condition peculiar to her employment caused her injury. In describing how she sustained the injury, claimant simply testified that she first felt the pain in her left arm when, while folding a pillowcase by hand, she "flipped the bottom [of the pillowcase] up to the top." Claimant did not testify, and the deputy commissioner, having observed claimant's hand-folding demonstration, did not find, that claimant had to make any significant exertion or awkwardly bend, twist, or otherwise move or contort her body or left arm to fold the pillowcase. Likewise, claimant did not testify to any defect or deformity in the particular pillowcase she was folding when injured that made it any more difficult to fold than any other pillowcase.

Indeed, claimant made no mention of any possible causal connection between the injury and the manner in which she was required to perform her job. Although she testified that she was six feet one and one-half inches tall and that the table upon which she folded the pillowcase was thirty-six inches high, she

-

neither asserted any connection between such a discrepancy in heights and her injury nor presented any evidence to suggest that such a connection existed. Additionally, no medical evidence established that the manner in which the employer required claimant to perform her job was causally related to the resulting injury to her left arm.[2]

Furthermore, folding pillowcases is a common household chore. Thus, as the dissenting commissioner noted, "[t]he hazards associated with folding [a single] pillowcase are hazards to which the claimant would have been equally exposed apart from her employment."

Consequently, claimant failed "to show that the conditions of the workplace or that some significant work related exertion caused the injury." Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989). "The mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable." Id.

---

[2] Dr. Hodges did opine generally that claimant's "repetitive strength sprain injury" was "probably related to the fact that her job station [was] not set up ergonomically for her," but, as the commission noted, "Dr. Hodges's opinion did not indicate that he was [even] aware of the sudden onset [of claimant's symptoms], as he did not begin treating the claimant until six months after her symptoms began." We conclude, therefore, that Dr. Hodges's opinion was in reference to claimant's ongoing condition rather than to her initial injury, which is the subject of this analysis. Thus, that opinion is an insufficient basis to find that the manner in which employer required claimant to perform her job was causally related to her injury.

-

We hold, therefore, that claimant failed to sustain her burden of proving that her injury arose out of her employment. Hence, the evidence presented in this case was insufficient as a matter of law to justify the commission's award of compensation benefits. Accordingly, we reverse the commission's award.[3]

<u>Reversed.</u>

---

[3] Employer also argues on appeal that claimant did not suffer a compensable injury by accident and that the commission failed to give proper consideration to claimant's medical records. Because we reverse on the ground that claimant's injury did not arise out of her employment, we do not address employer's additional arguments.

-

Benton, J., dissenting.

"An [injury by] accident arises out of the employment if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed."  R & T Investments Ltd. v. Johns, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984).

> "To constitute injury by accident it is not necessary that there should be an extraordinary occurrence in or about the work engaged in."  The evidence is sufficient to establish an injury by accident "even though the degree of exertion is usual and ordinary and 'the workman had some predisposing physical weakness.'"

Grove v. Allied Signal, Inc., 15 Va. App. 17, 22, 421 S.E.2d 32, 35 (1992) (quoting Kemp v. Tidewater Kiewit, 7 Va. App. 360, 363, 373 S.E.2d 725, 726 (1988)) (citations omitted).

The evidence proved Morrison is six feet one and one-half inches tall.  At the evidentiary hearing, Morrison demonstrated the manner in which she performed her job when she first felt pain.  Although she testified that the table where she had to stand to perform her work tasks was "about thirty-six inches high," she stood and demonstrated how she performed those tasks at her work station.  The deputy commissioner found that her work station was "about thirty-two inches from the floor."  The deputy commissioner expressly found her "to be a credible witness" and found that the onset of her pain, as she had attested, was the point in time when she first manually folded a

pillowcase. Although the deputy commissioner rejected Dr. Hodges' diagnosis of a repetitive injury, he accepted Dr. Hodges' opinion that Morrison's work station was not ergonomically designed for a person of her stature. The deputy commissioner also found credible Dr. Ivan E. Lazo's attending physician report, which diagnosed Morrison's tendonitis injury to be a result of the folding incident. The commission affirmed those findings and in particular, found the injury was of "sudden onset" and caused by the work activity. The commission also rejected the employer's contention that "the medical evidence showed a cumulative-trauma injury."

In determining whether credible evidence supports these findings, we are not at liberty to ignore the evidence in the record that Morrison's work station was not ergonomically configured for a person of her height. Because "[e]rgonomics is the study of the relationship between people and the equipment or systems they use," Norfolk Southern Ry v. Bowles, 261 Va. 21, 25, 539 S.E.2d 727, 729 (2001), the commission could rely upon the doctor's conclusion that Morrison's injury probably flowed from the inappropriate height of her work station. In First Federal Sav. & Loan Ass'n v. Gryder, 9 Va. App. 60, 65, 383 S.E.2d 755, 759 (1989), we held that a "contortion of the body" that is necessary to perform a job task is a hazard of the workplace. Likewise, we held in Bassett-Walker Inc. v. Wyatt, 26 Va. App. 87, 93-94, 493 S.E.2d 384, 387-88 (1997) (en banc),

that an employee who was required to squat or bend her knees at a knitting machine was engaged in a risk peculiar to the employment. We also noted that "[t]he mere fact that an unusual movement required by one's employment is occasionally done outside the workplace does not necessarily make a resulting workplace injury non-compensable." Id. at 94, 493 S.E.2d at 88.

Similarly, Morrison's employment exposed her to the peculiar risk of folding pillowcases at a work table that was not ergonomically suitable for her height. Dr. Hodges' opinion supports the conclusion that an improper ergonomic job station caused an injury. In addition to folding pillowcases, which may have been an everyday chore, Morrison's job required that she do so rapidly and on a table only thirty-two inches from the floor. "That the activity was usual, and did not require exertion, and that the injury was not 'foreseen or expected' are irrelevant." Grove, 15 Va. App. at 22, 421 S.E.2d at 35. The "'causative danger . . . had its origin in a risk connected with the employment, and . . . flowed from that source as a rational consequence.'" Johns, 228 Va. at 253, 321 S.E.2d at 289 (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)). Thus, I would hold that credible evidence proved that the manner in which the employer required Morrison to perform her job created a hazard of the workplace that caused the injury.

- 11 -

I would also hold that the commission properly credited Morrison's testimony and the report of Dr. Lazo in concluding that Morrison experienced a sudden injury that had its genesis in the initial folding incident. In Dollar General Store v. Cridlin, 22 Va. App. 171, 177, 468 S.E.2d 152, 155 (1996), we held that "the commission was free to credit claimant's testimony . . . as a basis for its finding of causation." Morrison testified that she had participated in sports and that she had never had any injuries prior to changing to this job, which required her to manually fold pillowcases at this table. Morrison explained that on the first day of hand-folding she immediately informed her supervisor of the pain. Although she initially thought the pain would subside once she became accustomed to the new job, it did not. Accepting her testimony, the deputy commissioner noted that Morrison's supervisor was present at the hearing and did not testify or refute Morrison's testimony about the reporting of the onset of pain.

In addition, Dr. Hodges' report indicated that Morrison's work station probably caused her injury and recommended a modification of Morrison's work station. Rejecting the view that Morrison suffered a cumulative trauma injury, the commission found that Dr. Hodges "did not indicate he was aware of the sudden onset" of Morrison's injury and that he did not begin treating her until six months after the event. Finding that the medical evidence essentially corroborated Morrison's

- 12 -

testimony, the commission accepted, as did the deputy commissioner, that her tendonitis injury was caused by her job station, which was ergonomically inappropriate for her. Moreover, Dr. Lazo opined that the incident reported by Morrison caused her injury. As in Ogden Aviation Services v. Saghy, 32 Va. App. 89, 102-03, 526 S.E.2d 756, 762 (2000), "the evidence in the instant case proved that [Morrison's injury] was not an injury of gradual growth or the result of cumulative trauma . . . [but, rather,] occurred while performing a single act." I believe credible evidence supports the commission's holding that Morrison's ergonomically inappropriate work station caused her injury.

For these reasons, I would hold that the commission's decision is supported by credible evidence establishing that Morrison's injury occurred when she first hand-folded the pillowcase, that she was working at a station not suitable for a person of her height, and that her injury resulted from performing a task required by her employment. Therefore, I dissent.